UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RYAN GALLOWAY, et al.,<br><br>              Plaintiffs,<br><br>    v.<br><br>LINCOLN NATIONAL LIFE INSURANCE CO.,<br><br>              Defendant. | CASE NO. C09-1479JLR<br><br>ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS |

## I. INTRODUCTION

This matter comes before the court on Defendant Lincoln National Life Insurance Co.'s ("Lincoln National") motion for judgment on the pleadings and the administrative record (Dkt. # 36) and Plaintiffs Ryan Galloway and Janice M. Belceto's ("the Estate") motion for summary judgment ordering payment of life insurance benefits (Dkt. # 37). Having reviewed the motions, as well as all papers filed in support and opposition, the administrative record, and deeming oral argument unnecessary, the court DENIES

ORDER- 1

Lincoln National's motion for judgment on the pleadings (Dkt. # 36), and GRANTS in part and DENIES in part the Estate's motion for summary judgment (Dkt. # 37). The court REMANDS this matter to the plan administrator for a decision consistent with this order.

## II.   BACKGROUND

From 2000 to 2008, Kenneth Galloway worked as a machinist for Turbine Engine Components Technologies Corporation ("TECT"). (True Decl. (Administrative Record ("Admin. Rec.") at 197.) On January 1, 2002, Lincoln National issued a group life insurance policy to TECT. (*Id.* at 11.) Because it was a voluntary life insurance policy, employees of TECT who elected coverage were required to pay the entire cost of the premiums. (*See* Blackburn Decl. (Dkt. # 25) Ex. 1 (Summary Plan Description ("SPD")) at 23.)

On October 14, 2004, Mr. Galloway, a TECT employee at the time, enrolled in the policy, electing coverage of $100,000. (Admin. Rec. at 174.) The policy contains a provision ensuring continued coverage, without payment of premiums, if a participant becomes totally disabled. The Extension of Death Benefits section of the policy provides, in relevant part:

> Any Personal Life Insurance on your life will be continued, without payment of premiums; if while you are insured:
>
>   (1) you become Totally Disabled before you reach age 60; and
>
>   (2) you submit proof of your disability which is received by the Company:
>
>     (a) within 12 months after your Total Disability begins; or

ORDER- 2

        (b) as soon as reasonably possible after that.

    Upon receipt of such proof, the Company will refund all premiums paid for your coverage from the date Total Disability began.

(*Id.* at 20.)  Under the policy, total disability "(1) means you are unable, due to sickness or injury, to perform the material and substantial duties of any employment or occupation for which you are or become qualified by reason of education, training, or experience; and (2) must continue for at least 180 days."  (*Id.*)  TECT also provided Mr. Galloway with a $50,000 Group Life Insurance Policy with similar terms as stated in the voluntary policy.  (Sec. Am. Compl. (Dkt. # 45) at 3.)

    In January 2008, Mr. Galloway stopped working at TECT due to achilles tendonitis.  (*See* Admin. Rec. at 169.)  Seven months later, in July 2008, Mr. Galloway requested that Lincoln National grant him a waiver from paying premiums on his life insurance policy due to his total disability.  (*Id.* at 125-28.)  On July 25, 2008, Mr. Galloway completed a Rehabilitation Survey that listed all of his restrictions and provided it to Lincoln National.  (*Id.*)  In the survey, Mr. Galloway reported that (1) he could only sit continuously for one hour, stand for 20 minutes, walk for ten minutes, and drive for 15-20 minutes; (2) he could only occasionally lift ten pounds or less; and (3) he could not climb, stoop, kneel, crouch, crawl or perform repetitive movements with his feet.  (*Id.* at 126.)  He also stated that he has "extreme pain continuously" and is taking "oxycodone 10 mg every 6 hours" due to "ankle surgery," "extreme tendonitis," and an aggravation of a "back injury from 2002."  (*Id.* at 127-28.)  Finally, he reported that the

1  back injury prevented him from walking properly, exercising, and prolonged sitting. (*Id.*
2  at 128.)

3  Lincoln National investigated Mr. Galloway's claim of total disability relying on
4  primarily the medical reports provided by Mr. Galloway's podiatrist. (*See generally*
5  Admin. Rec. at 198-252.) Lincoln National did not request additional information
6  regarding the restrictions Mr. Galloway reported on his Rehabilitation Survey, nor did it
7  ask Mr. Galloway when the self-reported restrictions began, which would have been
8  necessary information for it to determine whether he satisfied the relevant elimination
9  period. The only additional information Lincoln National requested from Mr. Galloway,
10 before denying his claim, was an Educational Assessment. (*Id.* at 196.) The record
11 indicates, however, that Lincoln National intended to deny his claim even before sending
12 him the Educational Assessment form. (*See id.* at 9.)

13 That August, Mr. Galloway failed to pay the voluntary policy premium. On
14 August 27, 2008, Lincoln National denied Mr. Galloway's waiver of premiums request,
15 determining—based on the results of a "vocational assessment" undertaken by Lincoln
16 National—that Mr. Galloway was not totally disabled as that term is defined in the
17 policy. (Admin. Rec. at 169-70.) On or about September 27, 2008, Mr. Galloway died
18 from "acute intoxication due to the combined effects of oxycodone, ethanol, sertraline,
19 hydroxyzine, cyclobenzaprine and ibuprofen." (*Id.* at 95.)

20 Pursuant to Lincoln National's review procedures (*see id.* at 32-33), the Estate
21 appealed the denial of waiver decision (*id.* at 164). In a letter dated January 12, 2009,
22 Lincoln National upheld its denial of waiver decision and denied payment of death

benefits under the voluntary policy. (*Id.* at 107.) The Estate then filed a second appeal. (*Id.* at 88.) In a letter dated April 29, 2009, Lincoln National again denied payment of death benefits and notified the Estate that it had exhausted all rights to appeal. (*Id.* at 80-81.)

On September 10, 2009, the Estate brought suit against Lincoln National in Snohomish County Superior Court, claiming that Mr. Galloway's death benefits under the voluntary policy were unreasonably denied under RCW 48.30.015(1). (Am. Compl. ¶ VII.) On October 16, 2009, Lincoln National removed the lawsuit to federal court (Dkt. # 1). In its prior order, the court held that the voluntary policy was governed by the Employee Retirement Income Security Act ("ERISA"). *See* July 2, 2010 Order (Dkt. # 35); *see also* 29 U.S.C. § 1144(a).

### III.   ANALYSIS

In the ERISA context, a district court "sits more as an appellate tribunal than as a trial court," and it "evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Denmark v. Liberty Life Assurance Co.*, 481 F.3d 16, 21 (1st Cir. 2007) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 18 (1st Cir. 2002)). A district court reviews ERISA benefits denials de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits"; if the plan does grant such discretionary authority, courts review the administrator's decision for abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "[I]n general, a district court may review only the administrative record when considering whether the plan administrator abused its

discretion." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 968 (9th Cir. 2006). However, "an insurer that acts as both the plan administrator and the funding source for benefits operates under what may be termed a structural conflict of interest," *id.*; and "that conflict [of interest] must be weighed as 'a facto[r] in determining whether there is an abuse of discretion,'" *Snow v. Standard Ins. Co.*, 87 F.3d 327, 330 (9th Cir. 1996) (quoting *Firestone*, 489 U.S. at 115).

The court previously found that the life insurance plan grants Lincoln National discretionary authority and that the proper standard of review in this case is abuse of discretion. (*See* July 2, 2010 Order at 13-4; *see also* SPD at 34, 44.) Applying this standard, the court finds that Lincoln National's failure to conduct a full and fair review of Mr. Galloway's claim for waiver of premiums together with its failure to engage in a meaningful dialogue with him regarding his self-reported restrictions was an abuse of its discretion.

Over twelve years ago, the Ninth Circuit held in *Booton v. Lockheed Med. Benefit Plan*, that the ERISA regulations require that a "meaningful dialogue" occur between the claims administrator and beneficiary:

> [I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it.  There is nothing extraordinary about this; it's how civilized people communicate with each other regarding important matters.  * * *  Lacking necessary—and easily obtainable—information, [the plan administrator] made its decision blindfolded.

110 F.3d 1461, 1463 (9th Cir.1997); *see also Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 870-71 (9th Cir. 2008) (the plan administrator must give a "fair chance" to the beneficiary to present evidence to support her claim).  Just a few

months before his death, Mr. Galloway informed Lincoln National that he could not sit, stand or walk continuously, could only occasionally lift ten pounds or less, and that he could not climb, stoop, kneel, crouch, crawl or perform repetitive movements with his feet.  He also notified Lincoln National that he was in "extreme pain continuously" and was taking "oxycodone 10 mg every 6 hours" due to "ankle surgery," "extreme tendonitis," and an aggravation of a "back injury from 2002."  Finally, he told Lincoln National that the back injury prevented him from walking properly, exercising, and prolonged sitting.  There is nothing in the record to suggest that Lincoln National asked him about these limitations or that it sought additional information from him or his medical providers regarding the limitations.  It appears that Lincoln National simply ignored Mr. Galloway's self-assessment.

Mr. Galloway was therefore not given a fair chance to explain his restrictions—and given his death shortly thereafter, such an explanation may not be possible.  In accordance with the Ninth Circuit's teaching in *Booton* and *Saffon*, the court finds that Lincoln National failed to give Mr. Galloway a full and fair opportunity to present his claim for waiver of premiums and that it did not participate in a meaningful dialogue with Mr. Galloway.  Instead, the record suggests that Lincoln National put on a blindfold to new information and made a decision to deny Mr. Galloway's claim based only on the information obtained from his podiatrists.  Unfortunately, Mr. Galloway died shortly after Lincoln National denied his claim and thus it may be too late for a "meaningful dialogue."  Whether this is true, however, will depend on the amount of additional information the Estate can gather to support Mr. Galloway's claim of total disability.

## IV. CONCLUSION

For the foregoing reasons, the court DENIES Lincoln's motion for judgment on the pleadings (Dkt. # 36), and GRANTS in part and DENIES in part the Estate's motion for summary judgment (Dkt. # 37).  The court grants the Estate's motion insofar as the court finds that the plan administrator abused its discretion in denying Mr. Galloway's claim.  The court denies the motion to the extent it requests that this court make a final determination of eligibility of life insurance benefits.

The court therefore REMANDS this matter to the plan administrator for a determination of Mr. Galloway's eligibility for life insurance benefits.  The court instructs the plan administrator to engage a meaningful dialogue with the Estate to determine whether Mr. Galloway was eligible for a waiver of premiums.  Consistent with this order, if the plan administrator upholds its determination of ineligibility, it must provide evidence to the Estate, and to the court, showing that it conducted a full and fair review of Mr. Galloway's claim.  The absence of information due to the death of Mr. Galloway shall be construed in favor of finding eligibility.[1]  Lincoln National shall make its final determination of eligibility within 90 days of the date of this order.  If necessary, at the conclusion of the 90 day period, the parties may renew their motions for judgment in their favor or request a new trial date.

---

[1] The court is troubled by the fact that the Estate's ability to garner sufficient information to support its claims is significantly crippled by the death of Mr. Galloway.  Lincoln National, on the other hand, had access to Mr. Galloway during the time it was analyzing his claims but failed to engage in meaningful dialogue with him.

1  The clerk is directed to strike the October 5, 2010 trial date.

2  Dated this 2nd day of September, 2010.

*/s/ James L. Robart*

JAMES L. ROBART
United States District Judge

ORDER- 9