1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT
                       WESTERN DISTRICT OF WASHINGTON
                              AT SEATTLE

9

10   RYAN GALLOWAY, et al.,                    CASE NO. C09-1479JLR

11                      Plaintiffs,            ORDER GRANTING MOTION
                                               FOR SUMMARY JUDGMENT
12          v.                                 AND DENYING MOTION FOR
                                               JUDGMENT ON THE
13   LINCOLN NATIONAL LIFE                     ADMINISTRATIVE RECORD
     INSURANCE CO.,
14
                        Defendant.
15
                         I.   INTRODUCTION
16
           This matter comes before the court on Plaintiffs Ryan Galloway and Janice M.
17
     Belceto's ("the Estate") renewed motion for summary judgment and to supplement the
18
     administrative record (Dkt. # 48); and Defendant Lincoln National Life Insurance Co.'s
19
     ("Lincoln National") motion for judgment on the administrative record (Dkt. # 49).
20
     Having reviewed the motions, as well as all papers filed in support and opposition, and
21
     deeming oral argument unnecessary, the court GRANTS the motion for summary
22

ORDER- 1

1 | judgment and the motion to supplement the record (Dkt. # 48), and DENIES the motion

2 | for judgment on the administrative record (Dkt. # 49).

3 | **II.    BACKGROUND & ANALYSIS**

4 | This case involves a claim by the Estate of Mr. Galloway for an order that life

5 | insurance benefits be paid by Lincoln National.  This order is a continuation of the

6 | court's prior order remanding the matter back to Lincoln National.  Having complied

7 | with the court's order, the parties are again before the court for a final adjudication of the

8 | Estate's claim for benefits.

9 | **A.    Factual History**

10 | From 2000 to 2008, Kenneth Galloway worked as a machinist for Turbine Engine

11 | Components Technologies Corporation ("TECT").  (Administrative Record ("AR") at

12 | 197.)  On January 1, 2002, Lincoln National issued a group life insurance policy to TECT

13 | and on October 14, 2004, Mr. Galloway, a TECT employee at the time, enrolled in the

14 | policy, electing coverage of $100,000.  (AR at 174.)  The policy contains a provision

15 | ensuring continued coverage, without payment of premiums, if a participant becomes

16 | totally disabled.  The Extension of Death Benefits section of the policy provides, in

17 | relevant part, that life insurance benefits will be continued without payment of premiums

18 | if, "while you are insured: (1) you become Totally Disabled . . .  and (2) you submit proof

19 | of your disability . . . ."  (*See* Blackburn Decl. (Dkt. # 25) Ex. 1 (Summary Plan

20 | Description ("SPD")) at 20.)  Total disability is defined by the policy as meaning "you

21 | are unable, due to sickness or injury, to perform the material and substantial duties of any

22 |

ORDER- 2

1  employment or occupation for which you are or become qualified by reason of education,

2  training, or experience;" and that it continues for at least 180 days.  (*Id.*)

3         In January 2008, Mr. Galloway stopped working at TECT due to achilles

4  tendonitis.  (*See* AR at 169.)  Seven months later, in July 2008, Mr. Galloway requested

5  that Lincoln National grant him a waiver from paying premiums on his life insurance

6  policy due to his total disability.  (*Id.* at 125-28.)  On July 25, 2008, Mr. Galloway

7  completed a Rehabilitation Survey for Lincoln National wherein he listed his self-

8  reported restrictions.  (*Id.*)  In the survey, Mr. Galloway reported that (1) he could only sit

9  continuously for one hour, stand for 20 minutes, walk for ten minutes, and drive for 15-

10  20 minutes; (2) he could only occasionally lift ten pounds or less; and (3) he could not

11  climb, stoop, kneel, crouch, crawl or perform repetitive movements with his feet.  (*Id.* at

12  126.)  He also stated that he has "extreme pain continuously" and is taking "oxycodone

13  10 mg every 6 hours" due to "ankle surgery," "extreme tendonitis," and an aggravation of

14  a "back injury from 2002."  (*Id.* at 127-28.)  Finally, he reported that the back injury

15  prevented him from walking properly, exercising, and prolonged sitting.  (*Id.* at 128.)

16         Lincoln National investigated Mr. Galloway's claim of total disability relying on

17  primarily the medical reports provided by Mr. Galloway's podiatrist.  (*See generally* AR

18  at 198-252.)  Lincoln National did not request additional information regarding the

19  restrictions Mr. Galloway reported on his Rehabilitation Survey, nor did it ask Mr.

20  Galloway when the self-reported restrictions began, which would have been necessary

21  information for it to determine whether he satisfied the relevant elimination period.  The

22  only additional information Lincoln National requested from Mr. Galloway, before

1  denying his claim, was an Educational Assessment.  (*Id.* at 196.)  The record indicates,

2  however, that Lincoln National intended to deny his claim even before sending him the

3  Educational Assessment form.  (*See id.* at 9.)

4       Mr. Galloway failed to pay his August 2008 premium, and on August 27th,

5  Lincoln National denied Mr. Galloway's waiver of premiums request, determining—

6  based on the results of a "vocational assessment" undertaken by Lincoln National—that

7  Mr. Galloway was not totally disabled as that term is defined in the policy.  (AR at 169-

8  70.)  On or about September 27, 2008, Mr. Galloway died from "acute intoxication due to

9  the combined effects of oxycodone, ethanol, sertraline, hydroxyzine, cyclobenzaprine and

10  ibuprofen."  (*Id.* at 95.)

11       Pursuant to Lincoln National's review procedures (*see id.* at 32-33), the Estate

12  appealed the denial of waiver decision (*id.* at 164).  In a letter dated January 12, 2009,

13  Lincoln National upheld its denial of waiver decision and denied payment of death

14  benefits under the voluntary policy.  (*Id.* at 107.)  The Estate then filed a second appeal.

15  (*Id.* at 88.)  In a letter dated April 29, 2009, Lincoln National again denied payment of

16  death benefits and notified the Estate that it had exhausted all rights to appeal.  (*Id.* at 80-

17  81.)  This lawsuit followed.

18  **B.     Procedural History**

19       The court has issued two prior orders relating to the Estate's claim for benefits.

20  The court incorporates its prior findings herein and will not repeat them in full.  In order

21  to put this order in context, however, the court briefly explains its prior rulings.

22

ORDER- 4

1        The first matter that came before the court was the Estate's motion for summary

2    judgment that the Employee Retirement Income Security Act ("ERISA") did not apply to

3    its claim against Lincoln National.  (July 2, 2010 Order (Dkt. # 35) (the "ERISA

4    Order").)  The court ruled that the claim for benefits was governed by ERISA and that

5    none of the safe harbors found in 29 C.F.R. § 2510.3-1(j) applied to the Estate's claim.

6    (*Id.*)  The court also granted the Estate's motion to supplement the administrative record

7    with the declaration of Dr. Robert T. Fraser, Ph.D., (dkt. # 17-2), who is the Estate's

8    vocational assessment expert.  (*Id.*)  In doing so, the court held that the Fraser declaration

9    evidenced Lincoln National's failure to conduct a proper vocational assessment of Mr.

10   Galloway's self-reported limitations.  (ERISA Order at 16.)  The court held that this

11   failure prevented the full development of the administrative record.  (*Id.* (citing *Abatie v.*

12   *Alta Health & Life Ins. Co.*, 458 F.3d 955, 973 (9th Cir. 2006).)

13       The second matter that came before the court was presented as cross-motions filed

14   by the parties: Lincoln National's motion for judgment on the pleadings and the

15   administrative record (Dkt # 36) and the Estate's motion for summary judgment ordering

16   payment of life insurance benefits (Dkt. # 37).  In its September 2, 2010 order, the court

17   held that Lincoln National failed to conduct a full and fair review of Mr. Galloway's

18   claim for waiver of premiums before denying the waiver.  (Sept. 2, 2010 Order (Dkt. #

19   47) ("Remand Order").)  The court also held that Lincoln National's failure to conduct a

20   proper review of Mr. Galloway's claim was aggravated by its failure to engage in a

21   "meaningful dialogue" with Mr. Galloway as required by Ninth Circuit precedent.  (*Id.* at

22   6.)  Accordingly, the court granted the Estate's motion for summary judgment, in part,

1  and denied Lincoln National's motion for judgment on the administrative record.  (*Id.* at

2  8.)

3      Having found Lincoln National's review of Mr. Galloway's claimed disabilities to

4  be flawed in many respects, the court was faced with the question of whether Lincoln

5  National could cure the defects when faced with the dearth of information caused by Mr.

6  Galloway's untimely death.[1]  (*Id.*)  Although the court expressed skepticism as to the

7  possibility of having a "meaningful dialogue" with the Estate regarding Mr. Galloway's

8  self-reported restrictions, the court nevertheless remanded the matter to the plan

9  administrator for a renewed determination of Mr. Galloway's eligibility for life insurance

10  benefits.  (*Id.* at 8.)  The court also held that the absence of information due to the death

11  of Mr. Galloway was to be construed in favor of finding him eligible for benefits.  (*Id.*)

12  **C.    Record on Remand**

13      Per the court's Remand Order, the parties attempted to engage in a dialogue

14  regarding Mr. Galloway's self-reported restrictions.  As part of this dialogue both parties

15  provided additional information in support of their positions regarding Mr. Galloway's

16

17

18

19      [1] In finding that Lincoln National abused its discretion by failing to engage in a
meaningful dialogue with Mr. Galloway regarding his self-reported restrictions, the court relied
on the Ninth Circuit's teachings in *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463

20  (9th Cir. 1997) and *Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 870-
71 (9th Cir. 2008).  Both cases stand for the proposition that the plan administrator must give a

21  "fair chance" to the beneficiary to present evidence to support his claim and that the ERISA
regulations require that a "meaningful dialogue" occur between the claims administrator and

22  beneficiary.

ORDER- 6

1 │ alleged restrictions.[2]  Specifically, the Estate provided two expert reports from Mr.

2 │ Galloway's treating physicians (Supp. AR 0002-0003) and Lincoln National provided an

3 │ expert report from a physician it hired to conduct an independent medical review of Mr.

4 │ Galloway's medical file (*Id.* at 0079).  Not surprisingly, the experts identified by Mr.

5 │ Galloway found him to be disabled during the elimination period, (*see id.* at 0002 &

6 │ 0003) and Lincoln National's expert found that there was not sufficient medical evidence

7 │ to find that Mr. Galloway was unable to perform any sedentary occupation during the

8 │ same period (*see id.* at 0086).

9 │          1.   Statements From Treating Physicians

10 │         On remand, the Estate provided additional evidence to Lincoln National in the

11 │ form of letters from two of Mr. Galloway's treating physicians.  The first letter is from

12 │ Mr. Galloway's primary care physician, Dr. Kristie Blade, M.D., Ph.D.  (Supp. AR

13 │ 0002.)  Dr. Blade writes that she began treating Mr. Galloway in February 2007 and

14 │ remained his treating physician until his death in September 2008.  (*Id.*)  She notes that

15 │ during this time, Mr. Galloway had "multiple, chronic health problems that included

16 │ chronic back pain, chronic shoulder pain, ankle pain (leading to surgery in April 2008),

17 │ chronic hepatitis C (periodic abdominal pain), a history of alcohol abuse over a 30 year

18 │ period, obstructive sleep apnea, insomnia, anxiety and depression." (*Id.*)  She also

19 │ explained that Mr. Galloway suffered from a history of arthritis, symptomatic varicose

20 │

21 │         [2] Lincoln National does not object to the Estate's motion to supplement the record (Dkt. #
22 │ 48), and both parties rely on the supplemental record in support of their motions.  Accordingly, the court grants to motion to supplement the administrative record.

ORDER- 7

1  veins and reported weakness in his limbs.  (*Id.*)  Dr. Blade concluded that Mr. Galloway's

2  "health was poor" and that had she been asked by Lincoln National to opine on Mr.

3  Galloway's condition she "more likely than not would have provided the opinion that Mr.

4  Galloway was disabled from performing any occupation or employment, including

5  sedentary occupations, from December 31, 2007 until his death in September 2008."

6  (*Id.*)

7         The second letter provided by the Estate was authored by Dr. Matthew Williams.

8  (Supp. AR 0003.)  Dr. Williams treated Mr. Galloway for severe right ankle and Achilles

9  tendon pain.  (*Id.*)  Dr. Williams opined that these infirmities prevented Mr. Galloway

10  from performing his duties as a machinist.  (*Id.*)  Dr. Williams also opined that based on

11  Mr. Galloway's persistent lower extremity pain, including recalcitrant Achilles

12  tendonitis, swelling and mobility limitations, and a number of other physical problems

13  reflected in Mr. Galloway's medical chart, Dr. Williams "would not have released Mr.

14  Galloway to return to work at any occupation or employment, sedentary or otherwise,

15  during the period from early January 2008, to his death in September 2008."  (*Id.*)

16         2.  Independent Medical Records Review

17         During the remand period, Lincoln National sent a letter to the Estate requesting

18  that it provide information in response to 12 questions.  The questions essentially asked

19  for additional medical records to support Mr. Galloway's claims relating to (1) a back

20  injury that he claimed prevented him from walking properly, exercising, or sitting for a

21  prolonged period; (2) the existence of the sitting and lifting limitations; and (3) the claim

22  that Mr. Galloway was unable to engage in any occupation during the period from

ORDER- 8

1   January 3, 2008 to July 3, 2008.  (Supp. AR 0004-0007.)  Finally, Lincoln National asked

2   the Estate to explain, if possible, "why Mr. Galloway did not mention any restriction in

3   sitting during the July 21, 2008 telephone call with Tanisha Chavis, when he was

4   expressly asked to describe his limitations?"  (*Id.* at 0006.)

5          The Estate attempted to respond to Lincoln National's request for information by

6   providing the letters discussed above and by providing additional medical records

7   including a July 2008 x-ray and an August 2008 MRI of Mr. Galloway's left shoulder.

8   (Supp. AR 0019-0072.)  As to the request regarding Mr. Galloway's alleged omission of

9   his sitting restrictions when speaking with Ms. Chavis, the Estate noted that "we would

10  have no idea what Ms. Chavis asked or did not ask or what she chose to record in

11  connection with the July 21, 2008 telephone call."  (*Id.* at 0010.)

12         Lincoln National examined all the information submitted by the Estate and

13  determined that an independent medical review was appropriate.  At the behest of

14  Lincoln National, Dr. Constance Walker, M.D., Board Certified Internal and Family

15  Medicine, conducted an independent medical review of the record and prepared an 18

16  page report explaining why the medical records do not support Mr. Galloway's claimed

17  restrictions "in their totality."  (*Id.* at 0079-0098.)  Lincoln National provided Dr.

18  Walker's report to the Estate.  The Estate responded to the report by arguing that,

19  although Dr. Walker had addressed Mr. Galloway's self-reported restrictions, she had

20  simply "dismissed" them.  (*Id.* at 0097-0099.)

21

22

ORDER- 9

1    On December 1, 2010, after reviewing the additional information provided by the

2  Estate and relying primarily on Dr. Walker's review of the record, Lincoln National

3  notified the Estate that it was denying the claim for benefits:

4       While we agree that Mr. Galloway was unable to perform the main duties
        of his own occupation as a Machinist, which required extended periods of
5       standing and walking, we find his medical records in their totality do not
        support his inability to engage in any employment or occupation beyond
6       the 180 day elimination period (01/03/08 to 08/03/08).  After reviewing all
        of the information in the file, including the information you submitted after
7       the remand by the court, we find Mr. Galloway did not qualify for the
        Extension of Death Benefits and therefore life insurance benefits are not
8       payable.

9  (Supp. AR 0105.)  On January 19, 2011, the Estate renewed its motion for summary

10 judgment for payment of life insurance benefits.

11 **D.     Abuse of Discretion Standard**

12     In the ERISA context, a district court "sits more as an appellate tribunal than as a

13 trial court," and it "evaluates the reasonableness of an administrative determination in

14 light of the record compiled before the plan fiduciary."  *Denmark v. Liberty Life*

15 *Assurance Co.*, 481 F.3d 16, 21 (1st Cir. 2007) (quoting *Leahy v. Raytheon Co.*, 315 F.3d

16 11, 18 (1st Cir. 2002)).  The usual summary judgment standards do not apply in an

17 ERISA case: "[W]here the abuse of discretion standard applies in an ERISA benefits

18 denial case, a motion for summary judgment is merely the conduit to bring the legal

19 question before the district court and the usual tests of summary judgment, such as

20 whether a genuine issue of material fact exists, do not apply."  *Nolan v. Heald College*,

21 551 F.3d 1148, 1154 (9th Cir. 2009) (internal citation and quotation omitted).

22

ORDER- 10

1    Here, the legal question before the court is whether Lincoln National abused its

2    discretion in denying Mr. Galloway a waiver of premiums.  This determination depends

3    on whether Lincoln National requested the needed information and offered a rational

4    reason for its denial of Mr. Galloway's claim.  *See Booton v. Lockheed Med. Benefit*

5    *Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997).  If Lincoln National meets this standard its

6    decision to deny benefits would be given substantial deference.  *Id.*  After a review of the

7    record before and after remand, the court finds that Lincoln National failed to follow-up

8    with Mr. Galloway, or any medical expert, regarding the limitations Mr. Galloway listed

9    in his self-assessment that, if true, rendered him completely disabled during the

10   elimination period.

11   Thus, Lincoln National's denial of benefits was not based on a full and fair record

12   as required by ERISA and Ninth Circuit authority.  *See id.* ("Lacking necessary—and

13   easily obtainable—information, [the plan administrator] made its decision blindfolded.");

14   *see also Saffon v. Wells Fargo & Co. Long Term Disability Plan*, 522 F.3d 863, 870-71

15   (9th Cir. 2008) (the plan administrator must give a "fair chance" to the beneficiary to

16   present evidence to support her claim); *see also Kunin v. Benefit Trust Life Ins. Co.*, 910

17   F.2d 534, 538 (9th Cir. 1990) (holding that to deny the claim without explanation and

18   without obtaining relevant information is an abuse of discretion).  As it turned out, the

19   opportunity for Lincoln National to engage in a meaningful dialogue with Mr. Galloway,

20   before or after it made the initial denial decision, was cut short by the death of Mr.

21   Galloway only a month later.

22

ORDER- 11

1   On remand, Lincoln National was given a second opportunity to attempt a full and

2   fair review of Mr. Galloway's claimed restrictions.  The evidence actually garnered

3   during remand, however, only further exemplified why a meaningful dialogue is required

4   in the first place.  On remand, the information provided by the treating physicians

5   supported the claimed restrictions in Mr. Galloway's self-assessment.  These restrictions

6   should have formed the basis of Lincoln National's original review but, due to its failure

7   to consider fully the claims made by Mr. Galloway before denying his claim, it never

8   contacted his treating physicians.

9   Lincoln National's decision to deny Mr. Galloway's claim without obtaining all

10  the required information and without engaging in a meaningful dialogue with him was an

11  abuse of discretion.  Moreover, had it engaged in any dialogue with Mr. Galloway,

12  Lincoln National would have learned that two of his treating physicians believed him to

13  be unable to perform any work, including sedentary work.  Based on the record before

14  the court, and on its finding that Lincoln National abused its discretion in denying Mr.

15  Galloway the requested waiver of premiums for his life insurance policy, the court orders

16  Lincoln National to pay life insurance benefits to the Estate of Mr. Galloway.

## III.    CONCLUSION

18  For the foregoing reasons, the court GRANTS the Estate's renewed motion for

19  summary judgment and to supplement the administrative record (Dkt. # 48); and

20  DENIES Lincoln National's motion for judgment on the administrative record (Dkt. #

21  49).  The court ORDERS Lincoln National to pay life insurance benefits to Mr.

22  Galloway's Estate.

ORDER- 12

1    Dated this 28th day of April, 2011.

2

3

4    _____
     JAMES L. ROBART
5    United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

ORDER- 13